Quintero versus Geico Marine Insurance. Thank you, your honor. Hold on. I want to make sure we had everybody on board and everybody's ready. Okay, Mr. Stein. Thank you, your honor. Doug Stein for the appellant Alfredo Quintero. This is a case that concerns a marine insurance policy with a stated term from May 5th, 2017 through May 5th, 2018. The issue here is whether that policy with an additional term from May 5th, 2018 through May 5th, 2019 was in effect on May 25th, 2018 when Mr. Quintero's boat was stolen. The district court ruled that the policy had lapsed on May 5th, 2018 because Mr. Quintero had not paid his premium. Thus, the district court further ruled that Geico had reinstated the policy on May 25th, 2018 but did so based on inaccurate information provided by Mr. Quintero and therefore was entitled to rescind the policy based on the doctrine of Ubermae Fidei. And I hope I'm pronouncing that correct. Geico argues that based on the doctrine of Ubermae Fidei and Florida Statute 627-409 which governs misrepresentations and insurance applications and a policy provision that the district court was correct. However, all of those bases have one thing in common which is not present in this case. They only apply when the insured provides inaccurate information before a policy issues. Let me see this. The policy covers only those losses that the period of coverage, right? That is correct. And if the old policy period ends, payment of the premium is a condition of coverage, right? Well, it's a condition of ultimately it's a condition of coverage but not in this particular case based on the evidence that was presented by Geico's litigation adjuster, Mr. O'Keefe. Let's listen through it though. He did pay the premium and the policy period ended, right? That particular, the stated term through May 5th, 2018 ended and a new term started. That so. I thought it expired. It did. The question is, well, that is the question that's on appeal as to whether it. I thought that's what the policy. I know this is complicated and other factors, but we start with the policy expired of its own terms. The policy expired. The coverage continued, however. That is correct. Because there's basically three ways that a policy can end. One is non-renewal, which didn't occur. One is cancellation. One is expiration or lapse. When we look at the evidence, it's kind of watching your previous oral argument, your honors. It's the facts that count in this case. Nobody's disagreeing with the law. When we look at the only evidence really that's presented in this case, which is Mr. O'Keefe, Geico's litigation adjuster, he explained what went on and how it operated to affect the coverage. He testified at his deposition multiple times, for instance, that Mr. Quintero never informed Geico that he wanted his insurance coverage to end. He also testified that Geico did not issue new coverage. On the contrary, what the evidence shows is that Geico treated the coverage as if it never occurred. Let me stop you for a moment, counsel. You said the only evidence. You refined the evidence to a singular point. Wasn't there evidence of the phone call, the exchange that took place between Quintero and the representative when Quintero complained about the increase in the costs? They go through this back and forth dialogue. He says, I don't want to pay 25% more. At the very end of it, he says, you're going to lose me as a customer with all my vehicles because you want me to pay an additional 25%. Then thereafter, Quintero did not inform him that the policy had expired as of May 5, telling him, quote, you're notified the policy indicated below has expired and all liability there undetermined on its expiration date as stated below. That evidence all came in. Why didn't that establish unambiguously that the policy had expired by its own terms on May 5 because your client did not pay the freight? Two points, your honor, in response to that. Number one, the recorded statement, which is an evidence, and I misspoke when I said there was only the deposition testimony. The recorded statement, it didn't end quite as you described. Mr. Quintero ranted about the fact his premium went up and made those statements that you stated he made, but at the end of that telephone conversation, he demanded to speak to a manager. His conversation was not finished. He never said, I'm done with you as a customer. He was transferred to the manager's telephone line, and it was busy, or he left a message, and the message, he never got through. That's the bottom line to the manager's line. As to the notice of... Oh, didn't he call the increase ludicrous and not acceptable? Yes, he did. He was ranting. He was upset that his premium went up, but he never said, and this is... And says you're going to lose me as a customer. That is what he said. He did say that, but he never said, and you have lost me. Well, let me ask you a question. Did he have to say that? Given the fact that one, he didn't make the payment at the time that it was due, the credit card was rejected, and then he was given notice that the policy had expired as of May the 5th. Why isn't that the end of the question? Even in the absence of this whole long dialogue saying not only was the amount ridiculous, but quote, you're going to lose me as a customer with all my vehicles, but independent of anything he said, didn't the policy expire on its own terms? The policy expired. The coverage did not based on the testimony of Mr. O'Keefe, and what Mr. O'Keefe testified quite clearly was that they would not end coverage simply because somebody did not make a timely payment on the premium. I thought what happened here and what the standard practice is, the policy's expired, but you can call, you missed your payment, and they will reinstate the coverage. They don't end coverage, but they have to reinstate it. The policy's expired. The coverage is gone. There's no such thing as expiration and coverage still existing. The policy's gone. The coverage goes with the policy. So the policy's expired. The coverage is over, but it is true in the industry. You call a few days late, a week later, whatever. You say, I'm going to pay the payment. They're going to reinstate the coverage, but the problem in this case is he lied when they did that, and that's a false. So it negates the reinstatement of the coverage. So help me. That's one analytical approach here. Why is that not right? Go ahead. So number one, there's no evidence that he lied. Let me just make that clear. There is evidence that he gave inaccurate information. There's no- He said the boat was in his house. Correct. I'm sorry? It had been stolen. Correct. Well, when he said in his house, and of course, nobody keeps a boat in their house. It was at his house. So you could keep it in some kind of garage or something like that. Correct. And bottom line, judges, what the point I'm trying to make is there was no evidence that when he made that phone call that he knew the boat was not there. Does that matter? No, it does not. If it was a materially false statement, whether he made a mistake or he did it intentionally, what difference does it make? No difference. I'm just clarifying what Judge Holt stated. There's no evidence that he lied, but it makes no difference. Look at the colloquy between the parties. He's asked specifically by the representative, Helen, a series of questions. He says, one, it's sound and seaworthy. And then he's asked specifically, and when was the last time you physically saw your boat? Mr. Quintero, every day. It is in my house. Helen, and that is in Dania, Florida. Dania, Mr. Quintero. Yeah, 1417 Nautilus Isle, Dania. False. That representation, false at the time it was made, and wasn't that representation material? It was false. Even if he did it by way of accident? It was false. It was not material. Material meaning that it affected Geico's decision as to whether to issue a policy and cover the risk of the law. Do you think it wouldn't have been material to them to cover a boat that has been stolen? Of course they wouldn't cover it, Your Honor, if there was a new policy being issued. But there was no new policy being issued. They treated, pursuant to Mr. Quintero's- The reinstatement of a policy. You don't think it would be material to the reinstatement of a policy? Judge, there is no law which states that a material statement would prevent coverage on a reinstatement of a policy. And in this particular case, in this particular case, Geico treated the coverage as not having been ended. They backdated the coverage to May 5th. They never made Mr. Quintero undergo a new underwriting process. So if I get it right, your whole argument turns on a singular proposition, that the policy had not expired when he failed to pay the freight and when they sent him the notice. The coverage had not expired. It was still a good policy. It was still in effect. The coverage was still in effect. That is correct, Your Honor. And therefore, these principles of, you know, we can call them misrepresentations, whether they're intentional or not intentional. But the principles that Geico argues don't apply because the coverage never ended. Okay, so if I have your position right, it boils down to this. One, the policy never expired. Two, it's true that the statement he made about the boat being in his possession in his house was false. And three, it was material, but it doesn't matter because the policy had been in effect from the get-go. Is that what it boils down to? Well, as to the third point, we would argue it wasn't material. Material being a legal term of art because it did not affect Geico's decision to continue coverage. So we're saying in this particular case, it was not material. So if it were material, do you necessarily lose? Well, I think, yeah, if it were material, then by definition, there would have to have been a new policy being put in place and they would be able to rescind if the legal definition of material was satisfied in this case. Thank you. Okay, Mr. Stein, you've saved a few minutes for rebuttal. Mr. Ryder. Thank you. May it please the court. My name is Jack Ryder here on behalf of Geico Marine. Your honors, as several members of the panel, in fact, I think each one of you have correctly pointed out, this is an issue about whether or not the policy expired by its terms on May 5th, 2018, when notwithstanding the fact that Mr. Quintero had an opportunity to make payment, he declined to do so. Your adversary says the policy expired, but the coverage didn't. Your honor, as Judge Hall pointed out, I've never heard of that proposition under either Florida or federal law. The notion that once the policy expires by its terms in accordance with a stated provision under the policy, that the coverage continues, notwithstanding the fact that the policy premium was not made, as Judge Marcus highlighted. The fact is, is that the payment was not made. And I think also, as Judge Marcus alluded to and specifically noted, and which counsel, neither in his brief, I don't believe during his argument has explicitly addressed, and I think is a critical aspect of the analysis, is the notice of policy expiration in the record at 15-1. That notice explicitly states that the reason why the policy ended was because it expired. That notice states that the expiration was effective May 5th, 2018. This is not a circumstance where the policy coverage continued, notwithstanding the fact that payment wasn't made. This is not a circumstance where there was some sort of failure to appropriately non-renew or an improper cancellation. The policy expired. As the court has noted, the transcribed conversation between Mr. Quintero and Geico could not have been any clearer. He was dissatisfied and he said, you're going to not paying the premium. So when we fast forward to, and of course, I do want to highlight, because I did cite in our brief, the cases of Allstate versus Mohan, a fifth district decision, and Munger versus Infinity Insurance, where both of those cases describe the fact of the distinction between a policy that expires by its terms and this principle of either cancellation or non-renewal. A policy expires by its terms when a premium isn't paid. Premium here, it was not paid. Mr. Quintero made it clear that Geico was going to lose him as a customer. So then, when we fast forward to that fateful day when the boat was stolen, after the boat was stolen, the call was made, the call was made, and if the court, again, when the court has already highlighted the fact that when the call was made to reinstate the policy and Mr. Quintero was asked specifically material questions about the status of the vessel, he explicitly stated that it was beautiful, sound and seaworthy, and it's in my house. He even says, I see it every day. And the suggestion that the absence of a vessel or that it had already been stolen would not be material, I would respectfully submit defies logic and is inconsistent with case law that makes clear that you look at an objective standard in terms of materiality. So the assertion that it was not material, I think is not, I don't think there's any merit to that point. And of course, in addition to the common sense and objective analysis, we do have an affidavit of Mr. O'Keefe who does indicate the materiality of this issue. And I really think it goes without saying that when Mr. Quintero called to reinstate his policy after the vessel had been stolen, that was certainly material. So I do, I think this case stops, starts and stops on the issue of whether or not the policy lapsed by its terms. But Judge Ho, you asked the question about, or you raised the point about the misstatement made at the time of the attempt to reinstate. So I do think it's critical to highlight, as the district judge did, the significance of the Uberma-Fide doctrine and why Uberma-Fide applies and why this case really exemplifies the importance of the application, the continued application of that doctrine. And the idea that an insured in the marine insurance context has an affirmative duty to disclose those factors that could in fact be deemed from an objective perspective, material to the insurance decision. And in HIH versus Frazier, this court made clear that this is a burden on the insured to fully and voluntarily disclose all those facts, even ones not required into by the insurer. So the burden at the time Mr. Quintero called in the attempt to reinstate after the vessel had been stolen, even if he did not know it was no longer there, and this was acknowledged by Mr. Stein, whether he knew about it or not, he had a duty to fully disclose all facts that were material to the issue. So at this point, it is absolutely clear. But we don't need to go there because the lady asked a bunch of questions and he answered. So we just need to decide this case. We don't need to get to what his duty was. She asked the questions and he answered them. That is true, Your Honor. I agree. So that's enough and we don't need to get into that doctrine because he made material, if we find that, material falsehoods. That's correct, Your Honor. The fact that Geico Marine did in fact make inquiry and the answers were inaccurate does in fact make clear that the reinstatement was improper. I would just submit that and I absolutely agree. The court need go no further than that to affirm the district judge's very well-articulated decision. I just did want to make clear and answer Your Honor's question that you posed to Mr. Stein, that when a person calls to reinstate that obligation at that time, because the policy had no longer been in effect, the obligation at that time under Uber and Mifidy did in fact apply. And so that's why I think doctrine certainly does at a minimum completely support the district court's conclusion here. We've also raised the fraud and concealment provision. It hasn't been raised or argued on. So I'll rest on my brief for that. Unless the court has any questions, we respectfully request the court affirm. I have just one, Mr. Ryder. Would the policy have expired of its own force on May the 5th, even if Quintero didn't have that dialogue with the agent? Absolutely, Your Honor. The policy had a period. That period ran from May 5th to May 5th, 2017 to 2018. It expired by its terms. And even if that conversation had never occurred, the notice of expiration was issued, as Your Honor pointed out. Is there any obligation to give notice of non-renewal or that's never been raised? Your Honor, this was not an issue of non-renewal. This was, again, the policy expired by its terms. The notice of expiration was material misrepresentation was revealed. There was a cancellation of any reinstatement. But with respect to the expiration, once that happened by its terms as an operation of the language of the policy, the policy expired. The conversation didn't need to occur. The fact that it did certainly supported the district judge's decision and, I believe, supports affirmance here. One final question, Mr. Ryder. Was there anything in the OP deposition that placed into controversy the expiration of the policy on May 5th? Absolutely nothing, Your Honor. And since you've asked that question, I want to make crystal clear. Mr. O'Keefe, during his deposition, there was a lot of back and forth in the examination of Mr. O'Keefe. But he did explicitly state at DE documents 140, page 147, that the policy was never cancelled. And he said it again at page 148. The policy was never cancelled. In other words, the issue of the expiration was never called into doubt. There was no dispute about the policy, period. Mr. O'Keefe did nothing or said nothing to disavow the implication of the expiration. And in fact, when he explicitly was asked questions, and he was peppered with questions by the examining council, he had several points in his deposition made clear that this was not a cancellation. The policy expired. Thank you. Again, we ask that the court affirm. Thank you, Mr. Ryder. Mr. Stein, you've saved three minutes. Mr. Stein, you've been muted. Thank you, Your Honor. You're welcome. Your Honors, I can't deny the fact that a notice of expiration was issued. I can't deny the fact that Mr. Quintero did not pay his premium. But my argument is based on that those don't matter. They're not relevant here because based on Mr. O'Keefe's deposition testimony, the coverage did not end. The coverage continued. And the doctrines of misrepresentation only apply if the coverage ended and if Mr. O'Keefe testified that what he was applying for was reinstatement of this policy. Right. And they re they reinstated it. And he made a material misrepresentation when he reinstated it, whether it was intentional or not. Understood about the intentional aspect of it, Judge. But Mr. O'Keefe testified was that they reinstated as if the coverage had not ended. He was not required to submit a new application. There was an application that was submitted after the loss occurred, but they did not rely on any application. He was not required. That's not unusual to reinstate without a new application. If you failed to pay the premium and you missed it, you just call up and say, I want to reinstate it. I mean, that happens all the time. You don't file a new application on a reinstatement. You make a phone call. And I think what's very important here, that's not the only the only fact that I'm relying on, but what Mr. O'Keefe testified was that GEICO does not end coverage simply because somebody doesn't pay their premium on time and that they wouldn't do that. That would be a disservice to their customers. And he wasn't required to pay at that moment. And in fact, if he hadn't paid for an undisclosed, undetermined amount of time thereafter, the coverage would not be denied. What are we to make Mr. Stein of the fact, though, that they filed a notice of expiration? Correct. He got it in the mail. He was told point blank, your policy has expired, terminated as of May 5th. Correct. And based on Mr. O'Keefe's testimony, Mr. O'Keefe, let me make it clear, did not testify that notwithstanding that notice of expiration, his coverage continued. He didn't say that. I'm not saying he said that, but based on the testimony that I have described, where he was not required to undergo. Can you shut that off? Go ahead. Not required, not required to undergo all of the prerequisites. Notwithstanding that notice of expiration that was sent, they treated the coverage as having not expired and then updated the coverage to adjourn the date for when this loss occurred. Thank you. I think we understand your case, Mr. Stein. That's our last case for the week. So we are now adjourned. Thank you. Thank you.